IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL KUEBER, | § | CV No. SA:15-CV-382-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF SAN ANTONIO, | § | |
| | § | |
| Defendant. | § | |
| | § | |

ORDER DENYING MOTION TO REMAND

Before the Court is a Motion to Remand filed by Plaintiff Michael

Kueber ("Plaintiff") (Dkt. # 3). The Court held a hearing on the motion on August

12, 2015. At the hearing, David E. Kirkendall, Esq., represented Plaintiff, and

Deborah Lynn Klein, Esq., represented Defendant City of San Antonio (the

"City"). After careful consideration of the supporting and opposing memoranda

and the arguments presented at the hearing, the Court, for the reasons that follow,

**DENIES** Plaintiff's Motion to Remand.

BACKGROUND

On September 15, 2011, the San Antonio City Council passed a

resolution providing that the districts drawn for the election of City Council

members "shall be configured so that they are relatively equal in total population

1

according to the 2010 Census."  ("Orig. Pet.," Dkt. # 1-1 ¶ VI.)  The resolution further specified that "[i]n no event should the total deviation between the largest and the smallest district exceed ten percent."  (Id.)  On September 20, 2012, the City Council adopted an ordinance approving the modified electoral districts.  (Id.) The populations of the modified districts range from 126,228 to 139,227, with a maximum deviation of 9.8%.  (Id.)

On April 20, 2015, Plaintiff filed an Original Petition in the 57th District Court of Bexar County, Texas, challenging the redrawn districts.  (Id. at 1.) Plaintiff seeks a declaration under § 37.001 of the Texas Civil Practice and Remedies Code that the district boundaries, as modified, violate the City Charter and the U.S. Constitution.  (Id. ¶ VIII.)  Plaintiff also seeks a preliminary injunction prohibiting the City from conducting the next City Council election until the district boundaries are redrawn.  (Id. ¶ XII.)

On May 11, 2015, the City removed the action to this Court, invoking its federal question jurisdiction under 28 U.S.C. § 1331.  (Dkt. # 1.)  On June 3, 2015, Plaintiff filed the instant Motion to Remand.  (Dkt. # 3.)  The City filed a Response in opposition to the Motion on June 10, 2015.  (Dkt. # 4.)

## LEGAL STANDARD

A defendant may remove to federal court any civil action brought in state court over which the district court would have had original jurisdiction.

28 U.S.C. § 1441(a); Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 397 (5th Cir. 2013).  Original jurisdiction may be based on either diversity of citizenship or the existence of a federal question.  Halmekangas v. State Farm Fire & Cas. Co., 603 F.3d 290, 295 (5th Cir. 2010).  On a motion to remand, the removing party bears the burden of establishing that one of these bases of jurisdiction exists.  Shearer v. Sw. Serv. Life Ins. Co., 516 F.3d 276, 278 (5th Cir. 2008).  Federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

To determine whether jurisdiction is present, the court considers the claims in the state court petition as they existed at the time of removal.  Louisiana v. Am. Nat'l Prop. Cas. Co., 746 F.3d 633, 637 (5th Cir. 2014) (citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995)).  Because removal jurisdiction implicates federalism concerns, all ambiguities must be construed in favor of remand.  Barker v. Hercules Offshore, Inc., 713 F.3d 208, 212 (5th Cir. 2013) (citing Manguno v. Prudential Prop. & Cas. Co., 276 F.3d 720, 723 (5th Cir. 2002)).

## DISCUSSION

Plaintiff argues that remand is required because his Original Petition does not plead a federal question.  Plaintiff contends that the Original Petition only

seeks relief on the basis that the City's modified district boundaries violate its own City Charter, a state claim that raises no federal question.  The City responds that Plaintiff has stated a federal claim because he seeks a declaration that the present boundaries of the districts "do not pass Constitutional muster."  The City further argues that the Original Petition states a federal claim because the language used in the applicable provision of the City Charter is a federal standard articulated by the U.S. Supreme Court.

A claim arises under federal law within the meaning of § 1331 "if a well-pleaded complaint establishes that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27–28 (1983)).  Under the well-pleaded complaint rule, the federal question must be present on the face of the plaintiff's properly pleaded complaint.  Caterpillar, 482 U.S. at 392.  Because the inquiry is limited to those parts of the plaintiff's complaint that are "well-pleaded," "the Court must look only to what necessarily appears in the plaintiff's statement of his own claim."  Venable v. La. Workers' Comp. Corp., 740 F.3d 937, 943 (5th Cir. 2013) (quoting Taylor v. Anderson, 234 U.S. 74, 75–76 (1914)).

Federal Rule of Civil Procedure 8 sets out the requirements for a pleading that states a claim for relief.  A pleading must contain (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought.  Fed. R. Civ. P. 8(a).  Plaintiff's Original Petition contains material that goes well beyond these requirements, including factual allegations unnecessary to his claim and legal argument not properly included in a claim for relief.  (See, e.g., Orig. Pet. ¶¶ V, X.)  The Court's jurisdictional analysis must be based only on those portions of the Original Petition that are well-pleaded, and the Court will therefore not consider its extraneous factual allegations and legal argument.

Limiting its analysis to those parts of the Original Petition that are well-pleaded, the Court finds that Plaintiff's claim arises under federal law.  While not entirely clear from the Original Petition, Plaintiff appears to claim that the modified boundaries of the City's electoral districts violate both the U.S. Constitution and the San Antonio City Charter.  Because both of these claims raise a federal question, the Court has jurisdiction, and Plaintiff is not entitled to remand.  The Court will discuss each in turn.

First, Plaintiff's Original Petition raises a federal question by requesting that this Court "enter a judgment that holds the present boundaries of

the districts in which City Council members are elected do not pass Constitutional muster and must be redrawn." (Orig. Pet. ¶ VIII.)  He further alleges that the City has "failed and continues to fail" its "obligation to create districts [that satisfy] the standard mandated by the United States Supreme Court." (Id. ¶¶ V–VI.)  It is scarcely necessary to state that a claim that a law or ordinance violates the federal Constitution raises a federal question under § 1331.  While Plaintiff brings his claim in part under the Texas Uniform Declaratory Judgment Act, a state action for declaratory judgment comes within federal jurisdiction if the threatened coercive action raises a federal question.  See Franchise Tax Bd. of Cal., 463 U.S. at 20–21.  Here, the coercive action is not only threatened, but also pleaded—in the form of Plaintiff's request for "an order that mandates that the City redraw the districts in such a way as to make the populations of each district as equal as is practical." (Orig. Pet. ¶ VIII.)  An action for redress of a violation of constitutional rights is provided for under 42 U.S.C. § 1983, and Plaintiff's cause of action is thus created by federal law.

Plaintiff's argument that his claim pleads only a violation of the City Charter is belied by his request for a judgment that the City's electoral district boundaries "do not pass Constitutional muster."  Even if Plaintiff's pleading was limited to the allegation that the district boundaries violate the City Charter, however, his claim would still arise under federal law.  As noted above, federal

question jurisdiction exists where the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.  McVeigh, 547 U.S. at 690. To assume jurisdiction over a federal question included within a state-law claim, the Court must find that "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."  Singh v. Duane Morris LLP, 538 F. 3d 334, 338 (5th Cir. 2008).

Plaintiff claims that the City's modified electoral district boundaries violate article II, section 4 of the City Charter, which provides that members of the City Council "shall be elected from districts or wards which . . . shall be as nearly equal in population as practicable."  San Antonio, Tex. Charter art. II, § 4.  The language "as nearly equal as practicable," in the context of electoral district boundaries, is a constitutional equal protection standard articulated by the Supreme Court in Reynolds v. Sims, 377 U.S. 533, 577 (1964), and applied to local governments in Avery v. Midland Cnty., Tex., 390 U.S. 474, 484–85 (1968).  See Reynolds, 377 U.S. at 577 ("[T]he Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly equal population as is practicable."); see also Hadley v. Junior Coll. Dist. of Metro. Kan. City, Mo., 397 U.S. 50, 54 (1970) (noting that the

Supreme Court had applied to state and local elections the principle that states must ensure "each person's vote counts as much, insofar as it is practicable, as any other person's").

Plaintiff acknowledges that Supreme Court precedent interprets "the precise language contained in the City Charter," and states that the Charter's language "impose[s] a standard contained in these Federal cases." (Dkt. # 3 at 4.) The Court agrees. The Supreme Court's "as nearly equal as practicable" federal equal protection standard had been well-established by the time the language of the City Charter was adopted in 1997. See San Antonio, Tex. Ordinance No. 85,965 (1997); Brown v. Thomson, 462 U.S. 835, 842–43 (1983); Connor v. Finch, 431 U.S. 407, 418 (1977); Abate v. Mundt, 403 U.S. 182, 185 (1971). By contrast, there is no source of Texas law that uses or otherwise interprets the "as nearly equal as practicable" language outside of the context of federal equal protection. While the parties have not provided the Court with evidence regarding the legislative history of the relevant Charter language, and the Court's own research has unearthed only the ordinances submitting the amended language for a referendum, San Antonio, Tex. Ordinance No. 85,551 (1997), and adopting the amendments following voter approval, San Antonio, Tex. Ordinance No. 85,965 (1997), there appears to be no dispute that the City Council's intent in proposing article II, section 4 was to subject electoral district boundaries to the federal equal

protection standard articulated by the Supreme Court.[1]  The Court must therefore look to federal law in order to determine whether the City has violated its Charter, and resolving a federal issue is thus necessary to resolve Plaintiff's state-law claim.

The federal question is also "actually in dispute."  The federal issue in a state-law claim is actually in dispute where there is some question "respecting [the] validity, construction, or effect" of the federal law at issue.  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 315 n.3 (2005) (quoting Shulthis v. McDougal, 225 U.S. 561, 570 (1912)).  Here, because the parties dispute whether the federal "as equal as is practicable" standard, and by extension, the City Charter, render invalid the electoral district boundaries enacted by the City Council in 2012, the effect of the federal standard is actually in dispute.

Additionally, the federal issue here is substantial.  To be substantial, a federal question must implicate "a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  Singh, 538 F.3d at 338.  As in Grable, in which analysis of the state claim required interpretation of the meaning of a federal tax provision, the equal protection standard at issue here "is an important issue of federal law that sensibly belongs in a federal court."  545

---

[1] The Court further notes that state courts have interpreted state and local laws using the language "as equal as is practicable" with reference to the federal equal protection standard.  See Albert v. 2001 Legislative Reapportionment Comm'n, 790 A.2d 989, 676–77 (Pa. 2002); In re Apportionment of Wayne Cnty., Cnty. Bd. of Comm'rs-1982, 321 N.W.2d 615, 263 (Mich. 1982).

U.S. at 315.  Plaintiff's claim rests on the interpretation and application of a constitutional standard, and thus justifies "resort to the experience, solicitude, and hope of uniformity that a federal forum offers."  <u>Singh</u>, 538 F.3d at 339 (quoting <u>Grable</u>, 545 U.S. at 312).

Finally, there is no risk of disturbing the balance of federal and state judicial responsibilities.  To guard against the possibility of upsetting the state-federal line drawn by Congress, the Court must consider whether exercising jurisdiction over the state-law claim would result in shifting traditionally state matters into federal courts.  <u>Id.</u>  While a claim that local government has acted in violation of its own governing law is traditionally the domain of state law, the City Charter here incorporates a federal equal protection standard well within the purview of the federal courts.

In sum, even if Plaintiff's pleading did not on its face seek a judgment that the City's district boundaries violate the Constitution, his claim would still arise under federal law because it necessarily depends on a substantial question of federal law—the interpretation and application of the "as nearly equal as practicable" equal protection standard applied to electoral voting districts.

<u>CONCLUSION</u>

The Court, for the foregoing reasons, **DENIES** Plaintiff's Motion to Remand (Dkt. # 3).

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, August 17, 2015.

_____

David Alan Ezra
Senior United States Distict Judge